**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., and PIPKIN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**March 28, 2022**

# In the Court of Appeals of Georgia

A22A0397. LUCKETT v. SPARKLES OF GWINNETT, INC. et al.

RICKMAN, Chief Judge.

This is a slip and fall action brought by Julie Luckett against Sparkles of Gwinnett, Inc., d/b/a Sparkles Family Fun Center and Skating Clubs of West Georgia, Inc. Sparkles filed a motion for summary judgment, which the trial court granted. On appeal, Luckett contends that the trial court erred by granting summary judgment. For the following reasons, we reverse.

"On a defendant's motion for summary judgment, the evidence is construed in the respondent's favor; the respondent is given the benefit of all doubts and all reasonable inferences therefrom are indulged in her favor." *Moore v. Food Assoc.*, 210 Ga. App. 780, 781 (437 SE2d 832) (1993). "On appeal of the grant of summary judgment, this Court applies a de novo review of the evidence to determine whether

any question of material fact exists." *Christopher v. Donna's Country Store*, 236 Ga. App. 219, 219 (511 SE2d 579) (1999). "Summary judgment is appropriate where the moving party can show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Id. See also OCGA § 9-11-56 (c). "A defendant meets this burden by showing the court that the documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of plaintiff's case. All of the other disputes of fact are rendered immaterial." (Citation and punctuation omitted.) *Christopher*, 236 Ga. App. at 219.

So construed, the record shows that on the date of her fall, Luckett was at Sparkles with her family including her daughter, son-in-law, and her grandchildren. Luckett had previously been to that Sparkles location seven to ten times and had been skating since she was two or three years old. Luckett deposed that she was coasting around the skating rink and when she came around a corner her "right foot slip[ped] in front . . . [and] I was trying to catch my balance as you do, I was not able to catch my balance. I was falling, so I fell to my right and I put my hand out . . . trying to brace my fall, and [as] I was falling [my] ankle twisted and that's how I broke . . . my ankle."

Luckett deposed that her fall was caused by "[s]omething wet on the floor" and that she did not notice the floor's condition until she fell. Luckett explained that at the time of her fall, it was hot inside the skating rink and the skating rink doors were left open. Luckett opined that she thought the wetness was caused by either wet air blowing in from outside or "condensation from how hot it was [inside the rink] because you could see the fog from the heat." Luckett's son-in-law averred that,

> [i]t was a humid and moist night, the air conditioning system was not on at the skating rink, and Sparkles left the front entrance door open the entire time I was there. After [Luckett's fall], I approached her on the rink floor and noticed that the floor immediately where Ms. Luckett fell was wet/there was moisture under her, and the bottom of her clothing appeared to have moisture on it as well.[1]

Another skater, who did not know Luckett, deposed that for approximately six years prior to the incident, he skated at Sparkles at least a couple of times a week with his minor daughter. The skater deposed that he was an "extremely confident" skater." On the date of the incident, it was raining outside and the skater deposed that it was

---

[1] Sparkles filed a motion to strike Luckett's son-in-law's affidavit alleging that it contained hearsay and speculation. At the hearing on Sparkles's motion for summary judgment, Luckett's counsel agreed to strike the alleged hearsay statements for the purposes of the hearing and we will not consider those statements.

"extremely hot" inside the rink and that it did not appear the air conditioning was on with the result being that "it felt very humid." When the skater began to skate he observed that "it was extremely slick" and the floor had "moisture on it." The skater skated around the rink one time and then he went to the front and told an employee that it was slick out on the rink and they should turn the air conditioning down in order to address the slick skating conditions. The skater did not see any Sparkles employee take any actions in response to his complaint.

After talking to the Sparkles employee, the skater deposed that the skating conditions did not improve and "it was a bumpy ride. It was still hectic, and there [were] a lot of people there, and people were sliding and slipping." The skater saw more than the normal amount of people falling down. The skater also told his daughter to be careful and "to control her speed" because the floor was "too slick." The skater opined that in order to remedy the condition of the rink floor the evening of the incident, the air conditioning needed to be turned down and an employee should have used a dry mop to soak up the moisture on the floor. After noticing Luckett had fallen, the skater remembered saying again that the air conditioner needed to be turned down because of the slick conditions.

4

1. Luckett contends that the trial court erred by concluding that Luckett could not identify what hazard caused her to fall.

"To prove negligence in a slip and fall premises liability case, the plaintiff must show (1) the defendant had actual or constructive knowledge of the foreign substance, and (2) the plaintiff lacked knowledge of the substance or for some reason attributable to the defendant was prevented from discovering it." *Hutchins v. J.H. Harvey Co.*, 240 Ga. App. 582, 584 (1) (524 SE2d 289) (1999). "A plaintiff who alleges she slipped on a foreign substance must present some evidence of a foreign substance on the ground where she slipped." Id.

Luckett deposed that she slipped on something wet on the floor and opined that the wetness was caused by the skating rink's door being left open or due to the humidity inside the rink. Luckett also presented an affidavit from her son-in-law and deposition testimony from an unrelated skater witness, both of whom explained that it was a humid and moist night and that the air conditioning was not on inside the skating rink. The skater witness deposed that the rink was slick due to the conditions inside the rink and warned Sparkles employees and his minor daughter about the slick skating floor. Construing all of this testimony in Luckett's favor, it was sufficient to create a genuine issue of material fact regarding the presence of wetness on the

5

skating rink floor where she fell and the trial court erred by finding that Luckett did not meet her burden to show what foreign substance caused her to slip. See *Williams v. EMRO Marketing Co.*, 229 Ga. App. 468, 470 (2) 494 SE2d 218) (1997); *Hutchins*, 240 Ga. App. at 584 (1).

2. Luckett contends the trial court erred by concluding that Luckett had equal knowledge of the hazard because she was generally aware it was a humid night.

"An owner or occupier of land is liable to invitees for injuries caused by his failure to exercise ordinary care in keeping his premises and approaches safe." *Kauffman v. Eastern Food & Gas*, 246 Ga. App. 103, 104 (2) (539 SE2d 599) (2000). "This duty of ordinary care requires the owner to protect the invitee from unreasonable risks of harm of which the owner has superior knowledge and to inspect the premises to discover possible dangerous conditions of which the owner does not have actual knowledge." Id. "To recover for injuries sustained in a slip-and-fall action, therefore, the invitee must prove (1) that the owner had actual or constructive knowledge of the hazard, and (2) that the plaintiff lacked knowledge of the hazard, despite the exercise of ordinary care, due to actions or conditions within the control of the owner." Id.

6

In the trial court's order, the trial court stated that "[Sparkles] state[s] that the rink floor was not slick due to humidity or condensation in the rink and if [it] had been made aware, [it] would have done another safety sweep to the floor." The trial court's order ignores the skater witness' testimony that he expressly warned a Sparkles' employee about the slick conditions and requested that Sparkles turn down the air conditioning. This evidence was sufficient to create a genuine issue of material fact as to whether Sparkles had actual knowledge of the hazard.

Additionally, the fact that Luckett was aware that it was foggy inside the skating rink, does not mean that she had specific knowledge of the hazardous wet conditions of the skating rink floor. We are mindful that,

> it is a plaintiff's knowledge of the *specific* hazard which precipitates the slip and fall which is determinative, not merely his knowledge of the generally prevailing hazardous conditions or of the hazardous conditions which he observes and avoids. The true issue in a slip and fall case such as the instant one is whether the plaintiff was without knowledge of the foreign substance which precipitated [her] slip and fall.

(Citation and punctuation omitted; emphasis in original.) *Telligman v. Monumental Properties*, 161 Ga. App. 13, 16 (2) (288 SE2d 846) (1982).

7

Accordingly, giving Luckett the benefit of all inferences, the trial court erred by holding that Luckett had equal knowledge of the hazard and we reverse the grant of summary judgment to Sparkles. See *Telligman*, 161 Ga. App. at 17 (2).

*Judgment reversed. Miller, P. J., and Pipkin, J concur.*